IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                          |   |                              |
|--------------------------|---|------------------------------|
| GREGORY D. WHITE         | : |                              |
|                          | : |                              |
| v.                       | : | Civil Action No. DKC 10-0929 |
|                          | : |                              |
| AMERITEL CORPORATION     | : |                              |
|                          | : |                              |

**MEMORANDUM OPINION**

Presently pending and ready for review in this employment discrimination case are two motions:  the motion for summary judgment filed by Defendant Ameritel Corporation (ECF No. 46), and the motion for inclusion filed by Plaintiff Gregory D. White (ECF No. 50).[1]  The issues have been fully briefed, and the court now rules, no hearing deemed necessary.  Local Rule 105.6.  For the following reasons, the motion for summary judgment will be granted, and the motion for inclusion will be denied.

I.  **Background**

A.  **Factual Background**

The following facts are uncontroverted.  Defendant Ameritel Corporation ("Ameritel") delivers Canon office products to companies in the Baltimore-Washington area.  (ECF No. 46-4, Kaufman Decl., ¶ 2).  During the relevant time period, Plaintiff

---

[1]  Plaintiff submitted the motion for inclusion as part of his supplemental materials to his response to the motion for summary judgment.  It is referred to on the docket as "second supplement to response to motion for summary judgment."

Gregory D. White was employed as a truck driver for Ameritel. (ECF No. 46-3, White Dep., at 3). Plaintiff's primary responsibilities related to the delivery of office products to various companies, including loading and unloading the truck at each delivery location. (*Id.*). On occasion, when there were not many deliveries to handle, Plaintiff would "pitch in other places at the company," such as sweeping, pulling orders, and stocking shelves, even though those duties "were not strictly part of a truck driver job." (*Id.* at 4-5). Plaintiff viewed himself as a "team player." (*Id.* at 5).

### 1. The 2007 Settlement Agreement

Plaintiff's claims in this case stem from a charge of racial discrimination that he filed against Ameritel in 2006 ("the 2006 EEOC charge"). Due to a muscle strain he suffered from picking up copiers, Plaintiff took two days off from work. (*Id.*). Plaintiff's supervisor, William Gillam, called Plaintiff's doctor to inquire about Plaintiff's absence. (*Id.* at 5-6). Plaintiff alleged that Gillam racially discriminated against him because Gillam never called other employees' doctors about their absences. (*Id.* at 7).

On January 4, 2007, the EEOC facilitated a settlement agreement ("the Settlement Agreement") between Plaintiff and Ameritel, which resolved the 2006 EEOC charge. (ECF No. 2-3). Among other things, Ameritel agreed not to discriminate or

2

retaliate against Plaintiff "as a result of filing [the underlying] charge." (*Id.* ¶ 4). The parties acknowledged that the Settlement Agreement constituted a "full and final settlement" of Plaintiff's then-pending EEO charge, that it "may be specifically enforced in court by the EEOC or the parties," and that it "may be used as evidence in a subsequent proceeding in which a breach of this agreement is alleged." (*Id.* ¶¶ 5, 6).

### 2. The September 2007 Incident

According to another Charge of Discrimination that Plaintiff filed with the EEOC, on September 21, 2007, Plaintiff was "subjected to verbal and mental abuse" by Ameritel President David Kaufman ("the September 2007 incident"). (ECF No. 2-5, at 2; ECF No. 46-3, at 74).[2] A dispute had arisen between Plaintiff and Harold Dodd, another employee, regarding the keys to a vehicle that Plaintiff was assigned to operate, and Kaufman apparently had sided with Dodd on the issue. (ECF No. 2-5, at 2; ECF No. 46-3, at 74). Kaufman allegedly told Plaintiff that "he was sick and tired of [him] in a very high-pitched voice in front of a group of employees." (ECF No. 2-5, at 2; ECF No. 46-3, at 74). The Charge alleged that this incident occurred in

---

[2] Neither party provides a signed or dated copy of this Charge.

retaliation for the 2006 EEOC charge underlying the Settlement Agreement.[3]

### 3. Plaintiff's Reassignment

In October 2007, Plaintiff was injured while on the job. (ECF No. 46-3, at 30-31). Plaintiff subsequently filed a Worker's Compensation claim, which was granted. (*Id.* at 33). He did not work for three months, during which time Ameritel replaced him with another driver. (*Id.* at 34-35). Plaintiff eventually returned to full-time work in January 2008. (*Id.*). When he returned, he was transferred to work in the warehouse. (*Id.* at 38). Ameritel did not reduce Plaintiff's pay or hours, nor did it take away any of his benefits like healthcare or leave. (*Id.* at 38-39). Plaintiff described his situation by saying that "everything stayed the same." (*Id.* at 39).

Although Plaintiff was assigned to work in the warehouse, he, as before, performed other non-related tasks. For example, in January 2008, he agreed to drive Bryan Carson[4] for certain assignments because Carson had some medical issues. (*Id.* at 43-44; ECF No. 46-8 ¶ 5). According to Carson, during these

_____

[3] On December 8, 2009, the Maryland Commission on Human Relations ("MCHR") dismissed this Charge, determining that there was no probable cause to believe that Kaufman was retaliating against Plaintiff for having filed the 2006 EEOC charge. (ECF No. 2-6, at 2-3; ECF No. 46-9, at 3-4).

[4] Carson was a color copier field technician at Ameritel. (ECF No. 46-8, Carson Decl., ¶ 1).

4

assignments, Plaintiff "repeatedly spoke very negatively about Ameritel and [Kaufman]." (ECF No. 46-8 ¶ 6). As a result, Carson informed two of Plaintiff's supervisors, Gillam and Anita Stonebraker, about his behavior and requested that someone else be assigned to drive Carson around for his appointments. (*Id.* ¶ 8). On January 18, 2008, Gillam and Stonebraker sent a memorandum to Plaintiff, which warned him that his conduct in front of Carson was unacceptable. (ECF No. 46-3, at 76). That memorandum further read, in part:

> As you know, you have been counseled in the past for similar disruptive and insubordinate conduct toward your co-workers and management. Such behavior cannot and will not be tolerated in the workplace at Ameritel. You are on warning by this memo that any further company disparagement and/or insubordination of management will result in your immediate termination from the company.

(*Id.*). Despite this warning memorandum, Plaintiff did not receive any decrease in pay or benefits, nor did his job change. (*Id.* at 56).

## 4. Plaintiff's Termination

On March 31, 2008, Plaintiff came to work anticipating that he would be working in the warehouse, though he "was really up for whatever the case may be." (*Id.* at 57). That morning, it was apparent that one of the truck drivers did not show up for work. (*Id.* at 58-59). When Plaintiff was initially asked to

take over for the missing driver, he refused because he had forgotten his driver's license at home. (*Id.* at 59). Kaufman directed Plaintiff to retrieve his license so that he could drive the truck that day. (*Id.* at 60). Plaintiff agreed to do so, but he also asked for reinstatement, in writing, as a driver "so [he] would know [his] status quo on what [he'll] be doing." (*Id.* at 60-61). When Kaufman asked if Plaintiff was refusing to follow his order, Plaintiff stated that he was not refusing, but he also continued to insist on something in writing "for [his] record" reinstating him to his former driving position. (*Id.* at 61-62).

Shortly thereafter, Kaufman provided Plaintiff with a termination letter. (*Id.* at 62). Plaintiff asked Kaufman what he was being terminated for, and Kaufman replied, "You're terminated because you didn't — you didn't do what was assigned for you to do." (*Id.*). More generally, the letter read, in part:

> This is to provide you notice that your employment with Ameritel has been terminated effective today, March 31, 2008. You[r] conduct this morning in refusing to undertake the duties I assigned you this morning is just the latest example of your insubordination toward me and other management here. You will recall that you were most recently formally counseled in writing about insubordination in January, and at that time it was made clear to you that any further insubordination would result in your immediate termination. As

you know, this company does not tolerate
such behavior in the workplace.

(*Id.* at 77).

**B.  Procedural Background**

On March 18, 2010, Plaintiff, proceeding *pro se*, filed a
complaint against Ameritel in the Circuit Court for Montgomery
County, Maryland.  After service, Ameritel timely removed to
this court on the basis of federal question jurisdiction.  (ECF
No. 1).  The original complaint was not a model of clarity.
Accordingly, the court granted a motion to dismiss filed by
Ameritel, but it did so without prejudice.  (ECF Nos. 20, 21).
In light of Plaintiff's *pro se* status, Plaintiff was afforded
several opportunities to amend his complaint to state a proper
claim, which he finally did on October 8, 2010, in what the
court construed as a second amended complaint.  (ECF No. 24).
Ameritel's motion to dismiss the second amended complaint was
denied, and two claims were deemed viable:  one for breach of
contract, and one for retaliation in contravention of Title VII
of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e
*et seq.*  (ECF No. 26).  Specifically, as alleged, the September
2007 incident, Plaintiff's reassignment, and Plaintiff's
termination potentially constituted breaches of the Settlement
Agreement.  And, as alleged, Plaintiff's reassignment and
termination potentially amounted to retaliatory adverse

employment actions prohibited by Title VII. On December 21, 2010, Ameritel answered the second amended complaint (ECF No. 27), and on December 27, 2010, a scheduling order was entered (ECF No. 28).

Over the next six months, discovery took place. Then, on June 20, 2011, Ameritel filed the pending motion for summary judgment. (ECF No. 46). In accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court mailed a letter to Plaintiff on June 23, 2011, notifying him that Ameritel filed a dispositive motion and that summary judgment could be entered against him. (ECF No. 47). Plaintiff filed an opposition to Ameritel's motion on June 28, 2011. (ECF Nos. 48-50). On July 14, 2011, Ameritel replied. (ECF No. 52).

Separately, when Plaintiff filed his opposition to the motion for summary judgment, he included a motion for inclusion, which seeks to add several individuals as parties to the lawsuit. (ECF No. 50). Accordingly, the motion will be construed as one for permissive joinder. Indeed, Ameritel interpreted the motion as such when responding to it on July 14, 2011. (ECF No. 51). Plaintiff did not file a reply.

## II.  Motion for Permissive Joinder

Plaintiff styles his motion as one for inclusion, which will be construed as one for permissive joinder. Because he seeks to add defendants more than twenty-one days after a motion

to dismiss was filed, Plaintiff "must seek leave to amend the complaint under Federal Rule of Civil Procedure 15(a), and the joinder must also satisfy the requirements of Federal Rule of Civil Procedure 20(a)(2)." *Fontell v. MCGEO UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *19 (D.Md. Aug. 6, 2010); *cf. Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) (stating that the court should consider "both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)"). Plaintiff does not seek leave to amend. Nevertheless, given his *pro se* status, Plaintiff's motion for inclusion will also be construed as a motion for leave to amend.

Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Leave should be granted "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Rule 20 introduces certain additional considerations. That rule would permit Plaintiff to join parties in a single action if (1) a right to relief is asserted against the defendants with respect to the same transaction or occurrence; and (2) a common

question of law or fact will arise in the action. Fed.R.Civ.P. 20(a)(2); *see also Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001). The rule grants courts "wide discretion concerning the permissive joinder of parties." *Aleman*, 485 F.3d at 218 n.5; *accord Jeffcoat v. Blyth Eastman Paine Webber, Inc.*, Nos. 88-2084, 88-2671, 1990 WL 15556, at *3 (4th Cir. Feb. 8, 1990) ("The provisions for permissive joinder . . . are very broad and the court is given discretion to decide the scope of the civil action." (quotation marks and brackets omitted)). The permissive joinder rule is to be construed in view of its purposes "to promote trial convenience and expedite the final determination of disputes." *Aleman*, 485 F.3d at 218 n.5 (quoting *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983)). If the addition of parties would not promote these objectives – or if it would result in prejudice, expense, or delay – the court may deny joinder. *Id.*

Here, Plaintiff seeks to join Stonebraker, Kaufman, and Gillam to the lawsuit. Plaintiff does not, however, set forth any reason why these individuals should be joined. Even if he did, however, amendment of the pleadings to join these individuals as defendants would be futile. First, Title VII claims apply only to employers, not individuals. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Second, as to the breach of contract claim, none of the three

individuals were party to the Settlement Agreement in a personal capacity. David Kaufman did sign the contract, but he signed it on behalf of Ameritel only. His signature alone does not otherwise indicate that he intended to be bound by the contract individually. *See Ace Dev. Co. v. Harrison*, 196 Md. 357, 366 (1950) ("[W]hen an official or agent signs a contract for his corporation it is simply a corporate act. It is not the personal act of the individual, and he is not personally liable for the corporate contract unless the matter is tainted by fraud . . . ."); *see also Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 578 (1995) ("[A]n officer is not personally liable *on an agreement* when there is no evidence in the record that the officer intended to assume the obligation."). Thus, neither of Plaintiff's claims could be maintained against Stonebraker, Kaufman, or Gillam. Because of this futility, Plaintiff's motion for inclusion, interpreted as both a motion for leave to amend and a motion for permissive joinder, will be denied.

**III. Motion for Summary Judgment**

    **A.    Standard of Review**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary

judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed.R.Civ.P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the court must construe the facts that are presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

**B.    Analysis**

**1.    Title VII – Retaliation**

Plaintiff alleges that Ameritel retaliated against him for engaging in protected activity in violation of Title VII. To survive summary judgment on this claim, Plaintiff must produce

either direct evidence of retaliation or make use of the test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Because he does not possess direct evidence, Plaintiff must employ the *McDonnell Douglas* approach. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Under this approach, Plaintiff would need to demonstrate three elements: (1) he engaged in protected activity; (2) the agency took an adverse employment action against him; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Davis v. Dimensions Health Corp.*, 639 F.Supp.2d 610, 616 (D.Md. 2009); *accord Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Once that challenge is met, Ameritel must provide a non-discriminatory explanation for the adverse action. The burden would then shift back to Plaintiff to show the reason is pretextual.

In its December 9, 2010, order, the court delineated Plaintiff's viable claims. (ECF No. 26, at 2-3). The only Title VII retaliation claims allowed to proceed related to Plaintiff's reassignment and termination as potential adverse employment actions taken in retaliation for him having filed the 2006 EEOC charge. The parties agree that Plaintiff has satisfactorily shown the first element of a *prima facie* case of retaliation; the 2006 EEOC complaint is protected activity. *See* 42 U.S.C. § 2000e-3(a).

As to the second element, Ameritel persuasively argues that Plaintiff cannot show that his reassignment was an adverse employment action.[5]  An action will constitute an adverse employment action if "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  "[R]eassignment of job duties is not automatically actionable.  Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  *Id*. at 71.  According to the United States Court of Appeals for the Fourth Circuit,

> absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action even if the new job does cause some modest stress not present in the old position.

*Boone v. Goldin*, 178 F.3d 253, 256-57 (4th Cir. 1999) (defining an "adverse employment action" in both the discrimination and retaliation contexts).

---

[5] Ameritel also asserts that the September 2007 incident was not an adverse employment action.  That incident was not, however, one of the potentially retaliatory actions that the court identified in the December 9, 2010, order as giving rise to a viable Title VII claim.

Here, Plaintiff has proffered no evidence that his salary, benefits, or responsibilities decreased when he was reassigned to the warehouse. In fact, he readily admitted that his benefits and pay remained steady despite his reassignment. As to his changed responsibilities, Plaintiff effectively conceded that the culture at Ameritel was a fairly collaborative one in which employees often took on work that was not strictly within their job descriptions. Thus, despite being reassigned nominally to the Warehouse, Plaintiff found himself being considered for and taking on driving tasks as he had been in his position prior to his transfer. Between the warehouse and the driving, Plaintiff's responsibilities appeared to remain largely the same. At best, it can be inferred from Plaintiff's requests to have a written reinstatement to his previous position that he was dissatisfied with the lack of predictability on the job. The mere fact, however, that Plaintiff found his reassigned position less appealing does not render the new job assignment an adverse employment action.

Thus, the only potentially adverse action Plaintiff suffered was his termination on March 31, 2008. As to his termination, Ameritel contends that Plaintiff's *prima facie* case still fails because he has not established the third element — a causal connection between his termination and his protected activity. In response, Plaintiff provides no argument. At

best, he may be relying on the sequence of events as suggesting a causal connection. Where there is evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity, the "less onerous burden of making a prima facie case of causa[tion]" is satisfied. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (alteration in original) (internal quotations omitted). At the same time, a "lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." *Id.*

Here, Plaintiff's protected activity took place in 2006, though the precise date is unknown. For present purposes, it can be assumed that this EEOC complaint was filed no later than January 4, 2007, which was the date of the Settlement Agreement. Plaintiff's termination occurred nearly fifteen months after the fact. Without more, fifteen months is too long a period of time to show that Ameritel fired Plaintiff because of Plaintiff's filing of the 2006 EEOC charge. *See, e.g.*, *Elries v. Denny's, Inc.*, 179 F.Supp.2d 590, 599 (D.Md. 2002) (holding that a six-month period is insufficient to show a causal nexus); *Church v.*

*Maryland*, 180 F.Supp.2d 708, 745-46 (D.Md. 2002) (fourteen-month period insufficient).[6]

Even if Plaintiff had set forth sufficient evidence to satisfy the first step of the *McDonnell Douglas* test, that would only shift the burden to Ameritel to provide evidence of a legitimate, non-discriminatory reason for its actions.  It has done so here.  Specifically, Ameritel explains that Plaintiff was fired because he exhibited consistent insubordination on the job.[7]  The burden thus shifts back to Plaintiff to show that Ameritel's reasons were pretextual, but Plaintiff has simply not offered a sufficient basis to doubt those reasons.  Although key decisionmakers were aware of Plaintiff's filing of the 2006 EEOC charge, that fact alone does not show pretext.  *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989) ("[M]ere knowledge on the part of an employer that an employee it is about to fire has filed a discrimination charge is not sufficient evidence of retaliation to counter substantial evidence of legitimate reasons for discharging that employee.").

---

[6] Similarly, even if Plaintiff's reassignment had constituted an adverse employment action, Plaintiff cannot show causality based solely on temporal proximity.  The reassignment took place roughly one year after the filing of the 2006 EEOC complaint, which is not close enough in time to find a causal connection.

[7] Ameritel even afforded Plaintiff notice that continued misconduct would result in termination in the January 18, 2008, warning memorandum.

The lack of any evidence of pretext ultimately proves fatal to Plaintiff's retaliation claim.

Accordingly, summary judgment will be entered for Ameritel on Plaintiff's Title VII retaliation claim.

**2. Breach of Contract**

To succeed in a claim for breach of contract under Maryland law, a party must prove that the opposing party owed a contractual obligation and that the opposing party breached that obligation. *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001). Here, it is undisputed that the Settlement Agreement gave rise to a contractual obligation between the parties. Plaintiff alleges that Ameritel breached the Settlement Agreement when it reassigned and terminated him. He adds that the September 2007 incident to the list of contractual violations as well.

While Plaintiff does not identify which portion of the Settlement Agreement is at issue, it appears that the following provision applies:

> [Ameritel] agrees that there shall be no discrimination or retaliation of any kind against [Plaintiff] as a result of filing this charge or against any person because of opposition to any practice deemed illegal under Title VII . . . , as a result of filing this charge, or for giving testimony, assistance or participating in any manner in an investigation, proceeding or a hearing under the aforementioned Act[].

(ECF No. 2-3 ¶ 4).   The Settlement Agreement does not clarify the definitions of the key terms of this provision, but both parties appear to agree that this provision was intended to incorporate Title VII principles and reduce the anti-retaliation mandate of Title VII to a contractual obligation. (*See* ECF No. 24 ("Plaintiff agreed not to institute a lawsuit against Defendant and the EEOC agreed not to use Plaintiff's charge as the jurisdictional basis for a civil action under federal anti-discrimination provisions."); ECF No. 46-1, at 22-23 (referring to lack of "temporal proximity" as destroying a "causal connection" and Plaintiff's reassignment as a potential "adverse employment action")).[8]

As discussed earlier, Plaintiff cannot establish a *prima facie* case of retaliation with respect to his reassignment or his termination.   Thus, Plaintiff may rely only on the September

---

[8] Even if the Settlement Agreement were construed to extend beyond retaliation to general discrimination under Title VII, Plaintiff still does not advance sufficient evidence to defeat summary judgment.   Because Plaintiff lacks direct evidence of discrimination, under *McDonnell Douglas* he must first establish a *prima facie* case of discrimination by showing:   (1) he is a member of a protected class, (2) his job performance was satisfactory, (3) he suffered an adverse employment action, and (4) he was treated differently from similarly situated employees outside his protected class.   *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).   Here, Plaintiff fails to establish at least the second and fourth elements. Therefore, to the extent the Settlement Agreement barred disparate treatment, Plaintiff would not be able to make a basic *prima facie* showing.

2007 incident as potentially supporting a breach of contract claim. As a matter of law, however, this argument is of no avail. Kaufman's alleged comment to Plaintiff on September 27, 2007, does not constitute an adverse employment action under Title VII. An employment action is adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. In contrast, "[t]he anti-retaliation provision of Title VII does not protect against petty slights, minor annoyances, and simple lack of good manners." *Geist v. Gill/Kardash P'ship*, 671 F.Supp.2d 729, 738 (D.Md. 2009). Here, Kaufman's lone comment that he was "sick and tired" of Plaintiff is little more than an innocuous remark that is unactionable under Title VII. Tellingly, the September 2007 incident was not so materially adverse so as to dissuade Plaintiff from filing another administrative charge complaining of Kaufman's conduct. Therefore, the September 2007 incident cannot prop up a *prima facie* case of retaliation either. Having failed to show a violation of Title VII, Plaintiff likewise has failed to show a breach of the Settlement Agreement.

Accordingly, judgment must be entered in Ameritel's favor on this claim.

## IV.  Conclusion

For the foregoing reasons, the motion for summary judgment filed by Defendant Ameritel Corporation will be granted, and the motion for inclusion, construed as both a motion for leave to amend and a motion for permissive joinder, will be denied.  A separate order will follow.

                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge